**Norman COX, Plaintiff,**

**v.**

**James THOMPSON, Governor, David Hooper, Joe Kellman, Ray Garrison, Charles Schmidt, Jr., Cecil J. Troy, Robert G. Ward, Thomas J. Garvey, Farrell J. Griffin, Defendants.**

Civ. No. 85–3196.

United States District Court,
S.D. Illinois,
East St. Louis Division.

May 12, 1986.

Mary Mansfield Brauer, Cook, Shevlin, Keefe & Chatham, Ltd., Belleville, Ill., for plaintiff.

Barbara B. Collins, Asst. Atty. Gen., Springfield, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendant's Motion for Summary Judgment (Document No. 24). On March 1, 1985, plaintiff brought this action under 42 U.S.C. § 1983 claiming the defendants, Governor James Thompson and individual members of the Illinois Racing Board, denied him of his right to exercise his political beliefs as guaranteed under the first amendment, and that defendants denied him of his due process rights under the fourth amendment by discharging him from his job.

In their motion for summary judgment, the defendants contend that the qualified immunity doctrine shields them from the plaintiff's § 1983 claim, and that the plaintiff has failed to state a claim upon which relief may be granted. In support of these contentions, the defendants make a two-tiered argument. First, the defendants state that Mr. Cox's termination from employment was a failure to rehire or hire him and not a discharge. Second, the defendants contend that it is not a violation of the constitution to fail to hire or to fail to rehire an individual because of his or her political affiliations or beliefs, and, therefore, the plaintiff has not stated a claim upon which relief may be granted. Alternatively, defendants argue that, even if the Court finds that a government official violates a constitutional right by failing to rehire an individual for political reasons, this right is not "clearly established" and, therefore, the qualified immunity doctrine protects the defendants from liability in this case.

The plaintiff argues that the Court should deny the motion for summary judgment for two reasons. First plaintiff contends that the qualified immunity doctrine does not apply in this case because the rights asserted by the plaintiff are clearly established constitutional rights. Second plaintiff contends that the classification of his termination as a dismissal, a failure to rehire, or as a failure to hire creates a question of material fact. Therefore, this Court should deny the motion for summary judgment.

Summary judgment is appropriate only where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The party moving for a summary judgment has the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). The Court must view the evidence, and the reasonable inferences to be drawn therefrom, in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Where the moving party has met its initial burden and the opposing party asserts the existence of a question of fact, the Seventh Circuit has identified where summary judgment is proper. The Court must determine whether the non-moving party

has established that there is a genuine issue as to the fact.

> To create a question of act, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial.... A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue.

*Posey v. Skyline Corp.* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Furthermore, the disputed fact must be material, that is, it must be outcome-determinative under the applicable law. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

As an initial matter, the Court notes the following. First, the Supreme Court in *Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985), has hinted that when the qualified immunity defense is raised the only inquiry the district court need make is whether "the legal norms allegedly violated by the defendant were clearly established at the time of the challenged action...." *See also Benson v. Allphin,* 786 F.2d 268, 279 (7th Cir.1986). Previously the Seventh Circuit has stated in *Egger v. Phillips,* 710 F.2d 292, 314 n. 27 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), that "to dispose of the case solely on the ground that at the time of the alleged constitutional violation the right in question was not clearly established would leave the status of such a right in limbo." *See* Nahmod, *Constitutional Wrongs Without Remedies: Executive Official Immunity,* 62 Was U.L.Q. 221, 259 (1984). This Court need not enter this debate because the defendants have moved for summary judgment on the alternative ground that the plaintiff's complaint fails to state a claim. Therefore, the Court will first ascertain whether the plaintiff's complaint states a recognized claim under 42 U.S.C. § 1983.

Second, the plaintiff alleges that the defendants discharged him because of his political party affiliation. The defendants have raised in response, and have supported with the appropriate documentation, that the Court should characterize the plaintiff's claim as a failure to rehire or hire the plaintiff rather than as a discharge claim. The Court will therefore determine the sufficiency of the complaint based on both a failure to rehire and a discharge theory. The Court does not believe that this case falls into the failure to hire theory simply because it is undisputed that the plaintiff previously worked for the defendants. For a good discussion of a failure to hire claim see *Avery v. Jennings,* 786 F.2d 233 (6th Cir.1986).

## I. FAILURE TO STATE A CLAIM

### A. Discharge

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), divided Supreme Court held that the newly elected Democratic Sheriff of Cook County, Illinois had violated the constitutional rights of certain non-civil service employees by discharging them solely because of their political beliefs. *Id.* at 362–73, 96 S.Ct. at 2684–89. The Court stated two reasons for its holding. First, patronage dismissals require employees who are members of the out-going party to compromise their job security. *Id.* at 355, 96 S.Ct. at 2680. In support of this reasoning, the Court stated:

> Since the average public employee is hardly in the financial position to support his party and another, or to lend his time to two parties, the individual's ability to act according to his beliefs and to associate with others of his political persuasion is constrained, and support for his party is diminished.

> .  .  .  .  .

> Conditioning public employment on partisan support [also] prevents support of competing political interests. Existing

employees are deterred from such support. . . .

*Id.* at 355–56, 96 S.Ct. at 2680–81.

The Court also reasoned that a patronage dismissal effectively imposed an unconstitutional condition on the receipt of a governmental benefit and therefore came within the rule of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The Supreme Court stated:

> In *Perry,* the Court . . . rejected the validity of limitations on First Amendment rights as a condition to the receipt of a governmental benefit, stating that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which it could not command directly.' Such interference with constitutional rights is impermissible."

*Elrod,* 427 U.S. at 359, 96 S.Ct. at 2682 (citations omitted) (emphasis added). The Court concluded, therefore, that a non-policy making government employee cannot be discharged or threatened with a discharge solely because of his or her political party affiliation. *Id.* at 372, 96 S.Ct. at 2689. The Court reaffirmed this general principle in *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980).

This Court must conclude, therefore, that a discharge solely on the basis of an employee's political affiliation constitutes a violation of the first amendment.

**B. Failure to Hire**

■ The Supreme Court has not directly addressed whether a failure to rehire because of the employee's political affiliation is unconstitutional. Many courts, however, have extended the *Elrod-Branti* rule to the failure to rehire cases because these cases are substantially equivalent to the dismissal situation. *See e.g., McBee v. Jim Hogg*

*County, Tex.,* 730 F.2d 1009, 1015 (5th Cir. 1984) (fact that deputies were terminated by a failure to rehire rather than dismissal is irrelevant to the question of whether they were impermissibly terminated for exercising their first amendment rights); *Tanner v. McCall,* 625 F.2d 1183, 1189–95 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) (court assumed the applicability of *Elrod* and *Branti* to failure to reappoint cases, but concluded that the plaintiffs failed to meet their burden of proving that political discrimination was a substantial or motivating factor in defendants' employment decisions); *Whited v. Fields,* 581 F.Supp. 1444 (W.D.Va.1984) (court assumed the applicability of *Elrod* and *Branti* to failure to rehire cases); *Visser v. Magnarelli,* 530 F.Supp. 1165 (N.D.N.Y.1982) (court agreed with a prior case that held failure to reappoint for political reasons is constitutionally on par with dismissals); *Brady v. Paterson,* 515 F.Supp. 695 (N.D.N.Y.1981) (after a thorough analysis of the failure to rehire cases, and the *Elrod-Branti* doctrine, the court holds that plaintiff's status as a holdover term appointee does preclude him from *Elrod-Branti* protection). *See also* Annot., 70 A.L.R.Fed. 371, 388 (1984) (and cases cited therein). *But see, Reed v. Hamblen County, Tennessee,* 468 F.Supp. 2 (E.D.Tenn.1979) (failure to rehire not protected). *Ramey v. Harber,* 589 F.2d 753 (4th Cir.1978), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979) (in dictum the court indicates that *Elrod* would not apply to reappointment cases). The Court could find no case in this circuit addressing the failure to rehire situation.

The Court agrees with those cases which hold that the failure to rehire a non-policymaking employee because of the employee's political affiliation constitutes a violation of the first amendment. Akin to a discharge case, the employee may feel compelled to compromise his political beliefs to assure reappointment or rehire. *See* Comment *Patronage and the First Amendment After Elrod v. Burns,* 78 Colum. 468, 475 (1978). Further, the employee "may

feel compelled at the risk of his job to work actively for the reelection of his party and, in particular, of his principal." *Id.* (footnote omitted). Finally, while an employee may not have a constitutionally protected right to be rehired, he does have an expectation of future employment. Thus, under either the failure to rehire or discharge scenario, the plaintiff states a valid 42 U.S.C. § 1983 claim.

## II. QUALIFIED IMMUNITY DEFENSE

"Government officials performing discretionary functions, as here, are shielded from liability for damages in a 42 U.S.C. § 1983 suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has not addressed when a constitutional right becomes clearly established nor to which court one must look in determining whether a right is clearly established. *Id.* at 818 n. 32, 102 S.Ct. at 2738. Must the Supreme Court have had determined the right, or can one or more lower court decisions on point make the right clearly established? What if the right has been upheld in other circuits but not addressed by our circuit? The Seventh Circuit has recently stated that reliance on Supreme Court decisions alone might be inappropriate because they are infrequent and this infrequency could convert the qualified immunity into absolute immunity. *Benson v. Allphin,* 786 F.2d 268, 275–76 (7th Cir.1986).

In the instant case, the Court has determined that both discharging a non-policymaking employee and failing to rehire a non-policymaking employee for political affiliation reasons violates the first amendment. The Court must now determine if these rights were clearly established at the time of the incident in question.

■ The Court is convinced that a non-policymaking employee's right to not be discharged for political affiliation reasons was clearly established at the time of inci-

dent in question. Both *Elrod* and *Branti* directly so held and both cases were decided well before the incident in question. Therefore, the qualified immunity defense would not apply to a discharge case that occurred within the relevant time frame.

■ On the other hand, the Court does not believe that the right not to be denied reappointment because of political affiliation was clearly established. As indicated earlier, neither the Supreme Court nor any court in this district has decided the question. The few courts that have addressed the issue are not in agreement. *Compare Ramey* and *Reed with Brady.* While today the scale tips in favor of the cases that have recognized the right, in late 1982 or early 1983, the scale was more balanced. The cases that have recognized the right have done so by extending the *Elrod-Branti* principle. Yet in *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court indicated that officials were not required to anticipate the extension of existing legal principles. Thus, in a failure to rehire case the qualified immunity defense would bar the plaintiff's claim.

Obvious from the above discussion is that the defense in this case turns on whether the defendants discharged the plaintiff or failed to rehire him. To support the assertion that the plaintiff's termination from employment constituted a failure to rehire, the defendants refer to letters sent to the plaintiff confirming his appointment to various jobs for specific periods of time. The defendants also submit the affidavit of the Personnel Officer of the Illinois Racing Board. In his affidavit, the Personnel Officer states in part:

. . . . .

3. The personnel file of Charles Norman Cox indicates the following employment with the Illinois Racing Board:

a. April 17, 1973 to November 15, 1973 Cox was employed as a urine taker.

b. In December 11, 1984 Cox was *rehired* by the Illinois Racing Board as a revenue inspector and served in such position until October 6, 1981.

c. Cox then became a mutual inspector.

d. On December 15, 1981, the Executive Secretary of the Illinois Racing Board, David Hopper, sent Cox a letter informing him that he was not being *rehired* for the next season.

e. On December 23, 1981, Executive Secretary Hooper sent Cox a letter stating that he was being *rehired* on a rotating basis as a mutual inspector....

f. Mr. Cox was *rehired* on December 1, 1982 and employed until March 20, 1982.

g. Cox was *appointed* to be a veterinary technician from March 26, 1982 until November 6, 1982.

(Document No. 25) (emphasis added).

According to the defendants, therefore, the plaintiff was a seasonal employee whose job terminated at the end of the season defined in the confirmation letters. Thus, rather than firing Norman Cox, the Racing Board merely failed to rehire him for another season.

The plaintiff counters this assertion by claiming he was discharged. To support this contention, the plaintiff submitted an affidavit that states in part:

.    .    .    .    .

1. It had been the practice of the Illinois Racing Board to retain employees of the Fairmont Racetrack from one season to the next, as long as there were jobs available.

2. In November, 1982, it was my understanding that I would continue in my employment at the Fairmont Racetrack when the track was open, and there were jobs available.

.    .    .    .    .

(Document No. 31)

In further support of plaintiff's claim that he was not merely a seasonal employee the Racing Board failed to rehire, the plaintiff refers to a letter dated October 21, 1982 allegedly sent by the Illinois Racing Board to the plaintiff. This letter states in part.

I regret to inform you that because of the cutback you will not be assigned to the Southern Illinois Trotting Corporation meeting at Fairmount Park.... *It is difficult to let good people go.*

(Document No. 31) (emphasis added). The plaintiff argues that the language of this letter and the very act of sending the letter negates the defendants' contention that his termination occurred with the ending of a season. Instead, the letter indicated that the plaintiff was "let go" or dismissed and that he had a reason to expect continued employment by the Racing Board.

The plaintiff's arguments and the contents of his personnel file support the contention that a question of fact remains as to whether the Racing Board's termination of plaintiff's employment constitutes a dismissal or a failure to rehire. Therefore, because the question of fact is outcome determinative, the defendant's motion for summary judgment should be denied.

A denial of the defendants' motion because a question of fact remains with respect to the qualified immunity defense would appear to contravene the rationale for the *Harlow* decision. In *Mitchell*, the Supreme Court stated that *"Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the essentially legal question.... The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." 105 S.Ct. at 2816. In this vein, the *Mitchell* Court held that a district court's denial of a claim of qualified immunity is an appealable final decision.

This Court does not believe that the qualified immunity defense must always be decided prior to trial. The defense could, as here, turn on a question of fact. In such cases, *Harlow* cannot be read so as to change the operation of Fed.R.Civ.P. 56. *See McSurely v. McClellan,* 697 F.2d 309,

321 n. 20 (D.C.Cir.1982). In fact, the *Mitchell* court qualified its holding by saying that the district court's denial was applicable to the extent that it turn on an issue of law. 105 S.Ct. at 2817. Thus, the Supreme Court implicitly recognized that the defense could hinge on a question of fact.

The Court emphasizes its ruling. The Court denies the defendants' motion for summary judgment because an issue of material fact remains. The Court is not necessarily denying the qualified immunity defense. If the jury finds that the defendants discharged the plaintiff, the defense would fail. If however, the jury found that the defendants merely failed to rehire the plaintiff, the defense would bar liability.

Finally, the Court feels compelled to discuss two related points. First, the failure to rehire or discharge labels appear to be mere form or substance. Yet, the law requires the officials to know these distinctions when clearly established constitutional rights turn on them. Second, in a related vein, maybe the qualified immunity defense should bar such suits where the officials actions are so fact sensitive. To a certain extent, this Court is holding the defendants to a judgment call which the Court itself cannot make on summary judgment. In other words, taking the state of the law as outlined above, because the Court cannot conclusively say that the incident was a failure to rehire rather than discharge, maybe the Court should not hold the defendants potentially liable for failing to draw the same conclusion. Under this approach, the defendants would be immune when the law is unclear, or when the law turns on the application of unclear facts. However, unlike the former situation, the defendants have all the facts necessary to draw the correct conclusion.

As a house-cleaning matter, on September 25, 1985, the Court denied the defendants first summary judgment motion. That motion raised the statute of limitations argument under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Court held *Wilson* retroactive, but still denied the defendants' motion because a question of fact remained as to when the plaintiff learned of his termination. On April 3, 1986, the Seventh Circuit in *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), held that *Wilson* was not to be applied retroactively. Therefore, the Court supplements its original opinion with the *Anton* holding.

Accordingly, the Court DENIES the defendant's motion for summary judgment (Document No. 24).

IT IS SO ORDERED.