# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 30, 2001 Session

## JENNIFER GREGG v. SHIRLEY MCKAY, DIANE FARLEY, and MICHAEL D. FLOYD

**Appeal from the Circuit Court for Sevier County**
**No. 99-549-IV     O. Duane Sloane, Judge**

**FILED MAY 30, 2001**

**No. E2000-01754-COA-R3-CV**

This is a suit seeking damages for sexual harassment filed by the Plaintiff/Appellant, Jennifer Gregg, in the Circuit Court for Sevier County against the Defendants/Appellees, Shirley McKay and Diane Farley. The Trial Court sustained the Defendants' motion for summary judgment. We vacate the judgment of the Trial Court and remand for further proceedings consistent with this opinion. Costs of appeal are adjudged against the Defendants.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Scott D. Hall, Sevierville, Tennessee, for the Appellant, Jennifer Gregg.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the Appellees, Shirley McKay and Diane Farley.

## OPINION

This is an appeal from the Sevier County Circuit Court's order sustaining the motion for summary judgment filed by the Defendants/Appellees, Shirley McKay and Diane Farley and dismissing the suit for sexual harassment filed by the Plaintiff/Appellant, Jennifer Gregg.

The sole issue presented for our review, which we restate, is whether the Trial Court erred in granting summary judgment in favor of the Defendants.

On July 6, 1999, the Plaintiff filed a complaint in the Circuit Court for Sevier County alleging that she experienced unlawful sexual harassment while employed as a waitress at Trotter's Restaurant. The Plaintiff named Shirley McKay and Diane Farley, individual owners of the

restaurant, as defendants in the suit.[1]  In her complaint, the Plaintiff alleged that, during her employment at Trotter's,  Michael Floyd, another employee of the restaurant, often harassed her by making sexually explicit and suggestive comments to her, by fondling her and by rubbing his body against her.  The Plaintiff further alleged that she was locked in a closet during which time Mr. Floyd stated that he intended to rape her or "pull a train" on her with other employees.  The Plaintiff stated that she reported the harassment to the restaurant's management staff, that she specifically informed her supervisors of the harassment, and that the Defendants knew, or should have known, of  the hostile work environment to which she was subjected.  The Plaintiff claimed that the acts or inaction of the Defendants resulted in the sexual harassment to which she was subject, entitling her to damages.

On August 17, 1999, the Defendants filed their answer to the Plaintiff's complaint, in which they, *inter alia*, denied that Mr. Floyd was either a manager of the restaurant or the Plaintiff's supervisor, and asserted that they did not know, and had no reason to know, of Mr. Floyd's alleged inappropriate behavior until July 6, 1998, when the Plaintiff reported such behavior to the restaurant manager, David Thurston.  The Defendants further asserted that on July 6, 1998, Mr. Thurston confronted Mr. Floyd concerning the Plaintiff's allegations, that Mr. Floyd then left the restaurant and that his employment was terminated when he next returned to the restaurant three days later. The Defendants further denied all claims of liability.  Thereafter, on February 11, 2000, the Defendants filed a motion for summary judgment which was granted by the Court pursuant to its order entered June 22, 2000.

The standard governing our review of a trial court's decision to grant a motion for summary judgment is well settled.  Because the trial court's judgment involves purely a question of law, it is not entitled to a presumption of correctness.  See *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995).  Our sole task in reviewing such a judgment is to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met.  See *Mason v. Seaton,* 942 S.W.2d 470 (Tenn. 1997).

As stated by the Supreme Court of this State in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993) at page 214:

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Thus, the issues that lie at the heart of evaluating a summary judgment motion are:  (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial. (emphasis in original)

---

[1]Michael Floyd was also named as a defendant in the suit; however, this appeal relates only to the summary judgment on the Plaintiff's claims against Ms. McKay and Ms. Farley.

The law in Tennessee holds that an employer is vicariously liable for sexual harassment by a supervisor with immediate authority over the victimized employee. See *Parker v. Warren County Utility District*, 2 S.W.3d 170 (Tenn. 1999). However, absent tangible employment action, the employer may avoid liability in such a case by showing by a preponderance of the evidence that: (a) the employer exercised reasonable care to prevent and promptly correct the sexually harassing conduct and (b) that the plaintiff employee neglected either to take advantage of any preventive or corrective opportunities which the employer has provided or unreasonably neglected to otherwise avoid the harm. See *Parker v. Warren County Utility District*, *ibid.*

The Defendants contend that Mr. Floyd was not the Plaintiff's supervisor, but merely a co-worker, at least with respect to the Plaintiff. Accordingly, the Defendants argue, the law of co-worker harassment should apply in this case and the Plaintiff, therefore, must prove the following elements as set forth in citing *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884 (Tenn. 1996) at page 888:

> (1) The employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a "term, condition or privilege" of employment; (5) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

The Defendants maintain that, whether this case is analyzed under the standard applicable to supervisor harassment or the standard applicable to co-worker harassment, they cannot be found liable unless it is shown that they failed to respond promptly to eliminate the harassing conduct after being advised of it. The Defendants assert that the undisputed evidence shows that, upon notification of the harassing conduct, they responded promptly and effectively to eliminate it, there is no genuine issue of material fact and their motion for summary judgment was properly granted.

In its order of June 20, 2000, the Trial Court sets forth the basis for its grant of the Defendants' motion for summary judgment as follows:

> Specifically, the Court finds that the Defendants' Motion For Summary Judgment should be granted based upon the principle of judicial estoppel and, alternatively, because the Plaintiff did not demonstrate, or specify, when, prior to July 6, 1998, supervisors at Trotter's Restaurant became aware of any sexual misconduct. The Court finds that Defendants McKay and Farley had taken reasonable action and had exercised reasonable care to prevent sexual harassing behavior from occurring and exercised reasonable care to correct any unlawful sexual behavior by Michael Floyd by terminating his employment on July 9, 1998.

The Trial Court's application of judicial estoppel in this case derives from the occasion of the Plaintiff's failure to state that any incidents of sexual harassment occurred, or were reported, prior to July 6, 1998, in her responses to a Tennessee Human Rights Commission Employment

Discrimination Complaint Questionnaire which she signed under oath on November 20, 1998. In support of the Trial Court's finding of estoppel, the Defendants argue that the Plaintiff's responses to the questionnaire are in conflict with the affidavits filed on April 24, 2000, and May 18, 2000, in support of her opposition to the Defendants' motion for summary judgment. The Plaintiff's affidavits declare that incidents of sexual harassment occurred, and were reported to her supervisors, prior to July 6, 1998. The Defendants contend that the Plaintiff is estopped from creating a factual issue regarding any such alleged prior incidents of harassment because of her earlier sworn responses to the questionnaire.

It is well settled that, under the doctrine of judicial estoppel, a party to a lawsuit who states by pleading, deposition, oral testimony or otherwise, that a given fact is true will not be permitted to deny that fact in subsequent litigation. See *Gilley v. Jernigan*, 597 S.W.2d 313 (Tenn. Ct. App. 1979). However, our review of the Plaintiff's responses to the questionnaire does not show that any of those responses contradict statements in her affidavits that she was subjected to, and reported, incidents of sexual harassment prior to July 6, 1998.

In their brief, the Defendants set forth the following questions from the questionnaire signed by the Plaintiff:

Q: Did you report to anyone that the harassing conduct was unwelcome?
A: Yes.
Q: If so, name and title of that person.
A: David Thurston.
Q: When did you report this?
A: July 6, 1998.
Q: How often and for how long has the conduct occurred?
A: [No response]

In summary, the Plaintiff has simply stated that she reported unwelcome harassing conduct to David Thurston on July 6, 1998, and nothing more. The Plaintiff makes no statement, either in the portion cited or elsewhere in the questionnaire, that no incidents of harassment occurred prior to July 6, 1998, or that she did not report any incidents of harassment prior to that date. It might be inferred that the Plaintiff focused on the date of July 6,1998, because that date marked the most recent incident of the alleged harassment and, perhaps, the most traumatic, that being the date the Plaintiff alleges she was locked in a closet and threatened with rape. We will not impute meaning to the Plaintiff's failure to describe what may or may not have occurred prior to July 6 ,1998. Nothing less than a willfully false statement of fact, in the sense of conscious perjury, is sufficient to give rise to an estoppel. See *State, ex rel. Scott v. Brown*, 937 S.W.2d 934 (Tenn. Ct. App. 1996). Accordingly, it is our conclusion that the Trial Court erred in applying the doctrine of judicial estoppel in this case.

We also find that the Trial Court erred in granting the motion for summary judgment based on its determination that the Plaintiff "did not demonstrate, or specify, when, prior to July 6, 1998, supervisors at Trotter's Restaurant became aware of any unlawful sexual misconduct." It is our finding that the Plaintiff's attestation, as set forth in her affidavits, that she was subjected to sexual harassment during the course of her employment prior to July 6, 1998, and that such harassment was reported to her supervisors prior to that date, is sufficiently specific. The Plaintiff was not required to set forth the precise dates of the alleged occurrences in order to withstand a motion for summary judgment. See *Byrd v. Hall*, *supra.*

We determine that the Trial Court also erred in basing its grant of summary judgment on its finding that the Defendants "had taken reasonable action and had exercised reasonable care to prevent sexual harassing behavior from occurring and exercised reasonable care to correct any unlawful sexual behavior by Michael Floyd by terminating his employment on July 9, 1998."

Whether the Defendants exercised reasonable care in this case is related to a disputed issue of a material fact, i.e., did the Plaintiff report any incidents of harassment to her supervisors prior to July 6, 1998? The Plaintiff attests that she did report incidents of harassment prior to July 6, 1998. The Defendants present evidence that she did not. Resolution of this issue necessarily requires a weighing of evidence and determination of credibility, both of which are jury functions and not the proper function of a judge ruling on a motion for summary judgment. See *Byrd v. Hall*, *supra.*

The Defendants also contend that the affidavits filed by the Plaintiff in opposition to their motion for summary judgment are insufficient to create a genuine issue of material fact because they are not based on the Plaintiff's personal knowledge. We disagree.

Our review of the Plaintiff's affidavits shows that several allegations set forth therein create genuine issues of material fact, if taken as true, and each of these allegations, if taken as true, must necessarily have been based on the Plaintiff's personal knowledge.

At paragraphs 3 and 4 of the affidavit filed by the Plaintiff on April 4, 2000, she respectively asserts that "Mr. Floyd was recognized by me, based on what I was told by my superiors and how he was addressed by the Restaurant's front managers and David Thurston, as a supervisor or manager." and "I was told by waitress managers that Michael D. Floyd had the authority to fire me." In the affidavit filed by the Plaintiff on May 18, 2000, she additionally states at paragraph 5 that "Based on directions given to me by my immediate supervisors and the acts of Mr. Thurston, I understood that I was subject to the authority of Michael D. Floyd." Each of these allegations creates a genuine issue of material fact as to the supervisory or managerial status of Mr. Floyd and bears directly upon the matter of the Defendants' vicarious liability for sexual harassment by a supervisor.

The Plaintiff also makes the following statement in each of her affidavits:

I had been subjected to sexual harassment at the Restaurant prior to July 6, 1998, and reported such harassment prior to July 6, 1998. My reports were made to my supervisors, including Donna Trentham and Barbara Molose, and they witnessed the sexually suggestive comments and touching by Mr. Floyd. I asked Mr. Floyd to stop harassing me and specifically told him that I considered his touching me and sexually suggestive comments to be sexual harassment.

These allegations also raise genuine issues of material fact relative to when the Defendants knew or should have known of Mr. Floyd's conduct and the promptness and reasonableness of their response. While it might be argued that that portion of the quoted material which pertains to what the Plaintiff's supervisors witnessed could not be based on the Plaintiff's personal knowledge, we infer that this statement is based on the Plaintiff's observation that her supervisors were in close visual and aural contact with the Plaintiff and Mr. Floyd during the alleged incidents of harassment and her observation that their attention appeared to be directed toward her and Mr. Floyd at that time.

Finally, the Defendants cite the case of *Parker v. Conwood Company,* an unreported opinion of this Court, filed in Nashville on July 20, 1999, for the proposition that the asserted knowledge of supervisors does not equate to notice to the employer of harassing conduct. The *Parker* case involved an action for co-worker harassment. In the case *sub judice* it has not yet been determined whether Mr. Floyd was the Plaintiff's supervisor or her co-worker. Furthermore, in *Parker* the plaintiff claimed that the defendant employer knew or should have known of the alleged harassment because supervisors saw and heard what was said, although the plaintiff made no complaint. This Court affirmed the summary judgment of the trial court in favor of the defendant. In granting the defendant's motion for summary judgment the trial court stated that "[f]or the defendant to be put on notice that the plaintiff felt she was being sexually harassed, when the plaintiff made no complaint, would require the supervisors to be mind readers.". Unlike the plaintiff in *Parker,* the Plaintiff in this case asserts that she did complain of Mr. Floyd's behavior to her supervisors. Accordingly, we disagree that the *Parker* case is analogous to the case before us.

For the foregoing reasons, the judgment of the Trial Court is vacated and the cause remanded for proceedings not inconsistent with this opinion. Costs of appeal are adjudged against Shirley McKay and Diane Farley.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE